## AIRLINE MOTOR COACHES, Inc., v. FIELDS et al.

No. 5613.

Court of Civil Appeals of Texas. Amarillo.

April 10, 1944.

Rehearing Denied May 15, 1944.

See also 140 Tex. 221, 166 S.W.2d 917.

Sewell, Taylor, Morris & Connally, of Houston, and Black, Graves & Stayton, of Austin, for appellant.

Collins, Williams & Garrison, of Lufkin, for appellee Dee Fields.

Baker, Botts, Andrews & Wharton, of Houston, for appellees W. G. Smith and Homer Davis.

Lightfoot, Robertson & Gano, of Fort Worth, for appellees G. R. Ogletree and Ben Ogletree, individually, and doing business as Ogletree Lumber Co., and Earl McAllister.

STOKES, Justice.

This is an appeal from a judgment in favor of the appellee, Dee Fields, against the appellant, Airline Motor Coaches, Inc., for $9000, damages for personal injuries alleged to have been received by him in a collision between a bus owned and operated by appellant and a large truck and trailer owned and operated by the appellees, G. R. and Ben Ogletree. The accident occurred on Highway No. 59 between Lufkin and Houston. The bus was making its regular schedule from Lufkin to Houston and the truck was returning from Houston. Appellee, Dee Fields, was a passenger on the bus and the appellee, Earl McAllister, was the driver of the truck, on which was a load of lumber and attached to which was a trailer. The trailer was equipped with what is called a float bed, that is, a flat bed without sides or endgates. Immediately prior to the collision, the bus approached a laundry truck belonging to the appellee, W. G. Smith, and being driven by the appellee, Homer Davis. The laundry truck was proceeding toward Houston in the same direction as the bus. In attempting to pass the laundry truck, the bus was driven to the left-hand side of the highway and before it could resume its customary place on the right-hand side, it collided with the lumber truck and trailer. It first struck the cab door of the lumber truck, but the principal impact was with the corner of the float bed on the trailer which cut into the bus and caused the injuries to appellee, Dee Fields, for which he sought damages.

In his original petition appellee Fields sued only the appellant, and in its answer appellant brought in G. R. and Ben Ogletree, owners of the lumber truck, Earl McAllister, the driver of the lumber truck, G. W. Smith, owner of the laundry truck, and Homer Davis, its driver, alleging that their acts and conduct in connection with the collision constituted the sole cause of the injuries to Dee Fields, and prayed for a judgment against them indemnifying it for any judgment that might be rendered against it in favor of the appellee Fields. In the alternative, it alleged that their acts and conduct contributed to the injury and it sought judgment against them for contribution in the event appellee Fields should recover a judgment against it. After appellant filed its answer bringing in the other appellees as defendants, appellee Fields filed his amended petition in which he also sued all of the parties named in appellant's cross-answer and prayed for judgment against all of the defendants jointly and severally.

The case was submitted to a jury upon one hundred seventeen special issues, in answer to which the jury found that the driver of appellant's bus was guilty of negligence which proximately caused the injuries to appellee Fields, and exonerated all of the other defendants from any blame whatsoever.

Appellant assails the judgment upon three grounds, first, that it was denied a fair trial because, although appellee Fields sued appellant and the other appellees, claiming they were jointly and severally liable for his injuries, during the trial Fields and the other appellees joined forces in what proved to be a successful attempt to procure for appellee Fields a judgment for a large amount against appellant alone. It asserts that under the guise of cross-examining Fields' witnesses and by means of leading questions, counsel for the other appellees repeatedly rehashed and reemphasized testimony given by the witnesses on direct examination and on several occasions managed to elicit new matter that was helpful to appellee Fields in his case against appellant, and that, by similar tactics, counsel for plaintiff reciprocated the favor. It asserts further, under this contention, that counsel for the plaintiff and the other appellees argued to the jury that the plaintiff had been seriously injured and was entitled to substantial damages. Secondly, it contends that the judgment of the trial court should be reversed because of the conduct of one of the jurors and the appellee, Homer Davis, who drank coffee together on the third day of the trial; and, thirdly, that the judgment should be reversed because the evidence showed that Earl McAllister, driver of the lumber truck and one of the appellees, was, as a matter of law, guilty of

negligence which was the proximate cause of the collision.

It will be noted that appellant's first assignment of error does not complain of any specific action of the trial court. It is directed at the general conduct of counsel for all of the appellees, the complaint being, in substance, that they joined forces and, by means of cross-examination of each other's witnesses, rehashed and reemphasized testimony given by their witnesses on direct examination and on several occasions counsel for the other appellees elicited new matter that was helpful to the plaintiff in the case. There is no complaint of any specific new matter that was thus brought out, nor of the ruling of the court upon any specific question, or questions, objected to by appellant as being improperly leading, and we have met with some difficulty in focusing the assignment upon any order, ruling, or proceeding in the trial that would constitute reviewable matter. Appellant reproduces in its brief a considerable portion of the testimony, in question and answer form, which it considers objectionable and which it asserts supports its first contention. We have compared all of the testimony included in the brief with the statement of facts and we find that appellant offered no objections to most of it. The principal objections offered were to the effect that the counsel representing the appellees other than Fields had no legal right to cross-examine the witnesses of the plaintiff. The record reveals a few objections offered by appellant to counsel's leading plaintiff's witnesses on cross-examination and they were overruled by the court on the ground that counsel was conducting cross-examination, but no complaint is made of these particular rulings. The only substantial basis for this contention is a motion filed at the conclusion of the argument, in which appellant moved the court to declare a mistrial because of the conduct of counsel for all of the appellees in joining forces in an alleged effort to secure for the plaintiff a judgment against appellant for a substantial amount.

It is elementary that counsel for the opposite party has the right to propound leading questions in cross-examining the witnesses of his adversary. The appellees other than Fields were originally brought into the case as defendants, not by Fields, the plaintiff, but by the appellant. After they were served with process, the plaintiff Fields amended his pleadings and sought judgment against all of the defendants. The pleadings therefore constituted all of the defendants antagonists of the plaintiff. Since appellant was seeking a judgment of indemnity or contribution against the other defendants, they were also antagonists of appellant. There is no contention of any party to the suit that the plaintiff Fields was not seriously injured in the collision and, according to the testimony of the physician and others, his injuries were apparent through observation of his movements and his obvious debilitated physical condition. The record shows that throughout the trial and in the argument counsel for the appellees other than Fields assumed that the plaintiff had been seriously injured but argued that his injuries had not been caused by any acts of their clients. Since the seriousness of the plaintiff's injuries was apparent to everyone, including the jurors, we cannot say that counsel were under any obligation to contend he was not injured or that his injuries were not serious and not deserving of substantial compensation, even though their clients had been sued by the plaintiff after they were brought into the case by appellant. In their briefs, counsel for the appellees justify their methods by the suggestion that if they had taken what they knew, and what the members of the jury obviously would have known, to be a false position with reference to the plaintiff's injuries, any influence they might otherwise have had with the jury would have been destroyed and the members of the jury might reasonably have entertained resentment against them to the extent that their clients would not have received the fair and unprejudiced consideration to which they were entitled.

The rule is well established that counsel have a wide range of discretion as to the manner in which they will conduct litigation in the courts, and under the circumstances of this case we cannot say they violated any rule of propriety or practise nor that the manner in which they conducted their respective defenses was in any sense improper. Counsel for the other appellees had the right to cross-examine the plaintiff's witnesses and also the witnesses of the appellant and to do so by means of leading questions because both the plaintiff and the appellant were seeking judgments against their clients. For the same reason, the plaintiff's counsel had the same right. Appellant does not contend the judgment

was excessive nor point out any specific injury that resulted to it by reason of the conduct of counsel of which it complains and, in our opinion, no reversible error is shown by its first contention.

The second contention presented by appellant has reference to certain conduct of the appellee, Homer Davis, and one of the jurors. The record shows that on the third day of the trial, during a recess of the court, the juror and a number of other court attendants went across the street from the courthouse to a coffee shop where they drank coffee. Some of appellant's attorneys were among them. It seems that the coffee shop was crowded with customers and while the juror was drinking a cup of coffee, the appellee, Homer Davis, entered, took a seat beside the juror, and ordered a cup of coffee. The juror consumed his coffee slightly ahead of Davis and went to the cashier and paid for both his coffee and that of Homer Davis. Davis then approached the cashier to pay for his coffee and the juror remarked to him, "I got yours." The juror then left the coffee shop and returned to the courtroom. The testimony on the motion to declare a mistrial and on the motion for a new trial, in both of which this incident was assigned as misconduct, showed without contradiction that the juror did not know, at the time this incident occurred, that Homer Davis was a party to the suit or that he was connected with the trial in any way. He testified he had seen Davis around the courtroom but did not know his name, had never spoken to him before, did not know him at the time he paid for the cup of coffee, and that he would not have paid for the coffee if he had known that Davis was a party to the suit. Davis testified, without dispute, that he lived at Houston; that he was a stranger in Lufkin where the case was being tried; that the juror was a stranger to him; and that he did not know the man was a member of the jury until afterwards. Rule No. 327, Texas Rules of Civil Procedure, provides that where the ground of a motion for a new trial is misconduct of the jury or because of any communication made to the jury, the court shall hear evidence thereof and may grant a new trial if such alleged misconduct be material and if it reasonably appears from the evidence that injury probably resulted to the complaining party. The testimony not only failed to show the probability of injury, but it showed quite positively that no injury resulted, or could have resulted, from the incident. In our opinion, to hold that this incident constituted misconduct of either the juror or appellee Davis would be stretching the rule to the breaking point. It is not contended that Davis communicated with the juror. In fact, the testimony is undisputed that he said nothing whatever to the juror and that he did not know the juror intended to pay for his coffee nor that he had done so until after the juror casually informed him of it. The juror did not know Davis had anything to do with the trial and, in our opinion, the incident was trivial and of no consequence whatever. Appellant's contention in respect thereto will therefore be overruled.

The third and last contention made by appellant is that the case should be reversed because the testimony of Earl McAllister, the driver of the lumber truck and one of the appellees, shows, as a matter of law, that he was guilty of negligence which proximately caused the collision and that it would have been avoided if he had exercised reasonable care immediately preceding it. On cross-examination, McAllister testified that he saw the bus about one hundred fifty feet away when it was coming around the laundry truck toward his lumber truck and that he then realized there might be an accident. He said his truck was proceeding at a rate of twenty to twenty-five miles an hour and that his brakes were in good condition. He said that if he had applied his brakes he might have been able to stop the truck within a distance of thirty feet; that the shoulders on each side of the highway were flush with the pavement; that he could have turned the cab off the highway in about fifteen feet; and that within a distance of about fifty feet he could have gotten both the truck and trailer off the highway. He said that, although the bus was about one hundred fifty feet from him and that he could have stopped his truck within about thirty feet, he did not do so and did not even apply his brakes, but gradually directed the truck to the right and off the pavement. The contention is that his failure to stop the lumber truck or drive it sharply to the right and off the pavement was the proximate cause of the injury, because if he had done either of these things, there would have been sufficient space for the bus to have resumed its normal side of the highway. We do not find

220

any evidence of negligence on the part of McAllister in his management of the lumber truck on this occasion. On direct examination, he testified, without dispute, that if he had stopped the lumber truck on the pavement, the bus would have collided head-on with his truck. He and other witnesses testified that if he had turned his truck suddenly to the right, the trailer would have "jackknifed," that is, the two vehicles would have folded together and caused serious damage to the vehicles and possibly injury to the driver. McAllister further testified that if he had turned the truck suddenly to the right, a serious wreck and damage to the truck would inevitably have followed. At most, this testimony raised the fact issue of McAllister's negligence and the jury resolved it against appellant. We cannot agree with appellant that the testimony shows, as a matter of law, that McAllister's acts were the proximate cause of the collision or that, as a matter of law, he was guilty of negligence in managing and driving the truck as he did.

We have carefully considered all of the assignments of error and contentions presented by appellant and, in our opinion, no reversible error is shown. The judgment of the court below will therefore be affirmed.